William J. BANDY, Plaintiff,

v.

AVONDALE SHIPYARDS, INC., Commercial Union Assurance Co., Ltd., Defendants.

G. & T. CRANE SERVICE, INC., Defendant-Appellee,

v.

EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN, Defendant-Appellant.

No. 71–2404.

United States Court of Appeals, Fifth Circuit.

April 18, 1972.

Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, La., for defendant-appellant.

James R. Pertuit, New Orleans, La., for defendant-appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This appeal turns primarily on the construction of a "coverage" endorsement to an insurance policy. We must determine whether, under Louisiana law, the complaint filed by an injured plaintiff against an insured defendant, when viewed in light of the endorsement, requires the insurer to defend the suit. We must also determine whether the duty to defend the suit is altered by a ruling by the district court denying a motion for summary judgment filed by the insurer after the commencement of the litigation.

William J. Bandy, the plaintif below, sued Avondale Shipyards, Inc., Commercial Union Assurance Company Ltd., Avondale's insurer; G. & T. Crane Service, Inc., the appellee in this Court; and Employers Mutual Liability Insurance Company of Pennsylvania, G. & T.'s insurer and appellant in this Court, for injuries sustained during the unloading of certain heavy equipment components at Avondale Shipyards on March 27, 1969. Bandy, a truck driver employee of Walker Truck Lines, delivered the components to Avondale and was injured when the counterweight of a crane, owned and operated by employees of G. &. T. Crane Service, pushed a piece of equipment onto Bandy during the unloading process. Avondale had hired G. & T. Crane Service to furnish a crane and crew for the unloading. There is no doubt that the injury occurred while the crane was being operated as a crane and not while it was being driven over the road. When Employers refused to defend Bandy's suit against G. & T., G. & T. filed a cross-claim against Employers, based on the insurance policy, for coverage and for Employers's refusal to defend.

On November 6, 1969, the district court denied Employers's previously filed motion for summary judgment asserting no coverage under the policy. The court assigned no reasons for denial of the motion. Bandy's claim was eventually settled out of court. Employers contributed $5000 to a settlement totalling $130,500. On June 17, 1971, the district court granted G. & T.'s motion for summary judgment on its cross-claim against Employers for default on Employers'

duty to defend G. & T.[1] This appeal by Employers followed.

Three interrelated but distinct issues are present in a tri-partite suit such as gave rise to the instant appeal. In the typical suit, an injured plaintiff sues an insured defendant and the defendant's insurer; the defendant insured implicitly or by cross-claim seeks to recover from the insurer under the policy. Three issues must be resolved: (1) Is the defendant insured liable to the injured plaintiff? (2) Is the accident, and the recovery if there is one, covered by the insurance policy issued by the insurer to the defendant insured? (3) Does the insurer owe to the defendant insured a duty to defend the suit by the injured plaintiff against the defendant insured?

The first issue—liability—is unrelated to the second issue—coverage. For instance, the injured plaintiff may recover in his suit against the insured defendant, but the liability of the insurer to pay the insured defendant under the policy will be determined only after the issue of coverage is resolved. Similarly, when the injured plaintiff fails in his suit against the insured defendant, coverage may or may not exist; the coverage issue is not reached because the defendant insured was not held liable. The issue of liability is, however, related to the third issue—the duty to defend. Under Louisiana law, the insurer's duty to defend a suit brought against its insured defendant is determined by the allegations of the injured plaintiff's complaint. The insurer is obligated to furnish a defense unless the allegations in the complaint, taken as true, "unambiguously exclude coverage." American Home Assurance Co. v. Szarniecki, 255 La. 251, 230 So.2d 253, 259 (1969);

*accord* Benoit v. Fuselier, 195 So.2d 679 (La.App.1967); Smith v. Insurance Co. of Pennsylvania, 161 So.2d 903 (La.App. 1964); C. A. Collins & Son v. Pope Bros. Steam Cleaning Co., 155 So.2d 278 (La. App.1963); Foreman v. Jordan, 131 So. 2d 796 (La.App.1961); Kelly v. United States Fidelity & Guaranty Co., 76 So. 2d 116 (La.App.1954). The "failure of an insurer to defend a suit as contemplated by the policy renders the insurer liable for all expenses incurred by an insured in defense of the action, including reasonable attorney's fees". Smith v. Insurance Co. of Pennsylvania, *supra,* 161 So.2d at 918. The insurer may, if it chooses, refuse to defend the suit, relying on its own assessment of the allegations in the complaint. It does so, however, at the risk of becoming liable to the insured for attorney's fees and expenses incurred by the insured in his defense in the event of an ultimate determination that the duty to defend was present. *See* Fontenot v. State Farm Mutual Insurance Co., 119 So.2d 588 (La.App.1960).

The issue of coverage is related to the duty to defend in that, as discussed above, the allegations in the initial complaint, unless they unambiguously exclude coverage, determine the duty to defend, thus necessitating a preliminary evaluation of coverage by the insurer or by the court in order to assess the duty to defend. The insurer may, of course, "deny coverage [and preserve its options on that issue] and yet furnish its insured with a defense [thus fulfilling its duty to defend] without subjecting itself to liability". Clemmons v. Zurich General Accident & Liability Insurance Co., 230 So.2d 887, 895 (La.App.1970); *accord* Breitenbach v. Green, 186 So.2d 712 (La.App.1966); Fontenot v. State Farm Mutual Insurance Co., 119 So.2d

---

1. The order granting the motion for summary judgment reads, in pertinent part: that the cross-claimant, G. & T. Crane Service, Inc., recover of the respondent, Employers Mutual Liability Insurance Company of Wisconsin, the sum of Four Thousand Five Hundred and No/100 ($4,500.00) Dollars, as attorney's fees for defense of the principal demand, plus the sum of twelve (12%) percent thereon as statutory penalties, and the sum of Five Hundred and No/100 ($500.00) Dollars as attorney's fees for prosecution of the instant motion for summary judgment, together with interest thereon as provided by law, and its costs of action.

588 (La.App.1960). "[T]he duty of an insurer to defend its insured under a policy of liability insurance is of greater scope than the insurer's duty to pay." Smith v. Insurance Co. of Pennsylvania, *supra,* 161 So.2d at 918. Although it may ultimately be determined that coverage does not exist, the duty to defend nevertheless exists "if the allegations of the petition taken as true would result in liability which the insurer is obligated to discharge on behalf of the insured". 161 So.2d at 918.

██ We must, therefore, determine, if, in the present case, Bandy's (the injured plaintiff) allegations in his complaint filed in his suit against G. & T. (The insured defendant) and others "unambiguously excluded coverage" so as to relieve Employers (the insurer) of its duty to defend. Bandy's complaint alleges in pertinent part:

### V.

On or about March 26, 1969, petitioner drove onto the Avondale Shipyards, Inc. plant site at Avondale, La., for the purpose of delivering a truckload of heavy equipment to the defendant, Avondale Shipyards, Inc.

### VI.

On March 27, 1969, the defendants, Avondale Shipyards, Inc. and G. & T. Crane Service Incorporated, were jointly engaged in the operation of unloading the heavy equipment above referred to.

### VII.

During the unloading operation, the crane struck some steel framing located in the Avondale Shipyards, Inc. yard, causing the steel framing to move forward crushing your petitioner between it and a large unit of machinery.

### VIII.

The accident made the basis of this suit and the resulting injuries were caused solely by the joint negligence of the defendants, Avondale Shipyards, Inc. and G. & T. Crane Service Incorporated.

Taking these allegations as true, as we must for purposes of determining the duty to defend, the accident occurred during the unloading process and was caused by one of the G. & T. cranes.

The allegations, taken as true, described an accident excluded from coverage under the policy issued to G. & T. by Employers. The relevant portion of the policy is an endorsement dated February 12, 1969, providing:

### SPECIAL VEHICLE COVERAGE

It is agreed that any vehicle described below or designated in the policy as subject to this endorsement and any vehicle of the same type acquired during the policy period as a replacement thereof shall be deemed to be an automobile and not mobile equipment: but the insurance with respect to such vehicles as are further designated by ("Z") (or any replacement thereof) does not apply to bodily injury or property damage arising out of the operation of any machinery or apparatus attached to, mounted on or forming a part of such vehicle, whether such bodily injury or property damage occurs in the course of such operation or subsequent thereto.

The first clause of the endorsement (before the semicolon) serves to define certain vehicles as "autombile[s]" rather than "mobile equipment" for purposes of the general coverage portion of the policy. The vehicles so classified would be covered under the policy while traveling over the road while vehicles classified as "mobile equipment" would not. The second clause of the endorsement excludes those vehicles designated "Z" from coverage for injury caused by "any machinery or apparatus attached to, mounted on or forming a part of such vehicle".

Attached to the policy is a schedule listing several vehicles. The schedule lists six cranes; all of the cranes are

listed as "Spec[ial] Equip[ment]", referring to the "Special Vehicle Coverage" endorsement. In addition, all of the cranes are designated by "Z", referring specifically to the second clause of the endorsement. As a result, no coverage is afforded for injury caused by these cranes while being operated as cranes because it is undisputed that the cranes, while being operated as opposed to transported, are covered by the description in the endorsement—"the operation of any machinery or apparatus attached to, mounted on or forming a part of such vehicle".[2]

Bandy's complaint, taken as true, alleges that the accident occurred during the offloading operation and was caused by a G. & T. crane. The insurance policy excludes coverage for injury caused by these cranes while being used for loading. Because the allegations "unambiguously exclude coverage", Employers was not under a duty to defend Bandy's suit against G. & T.

> It is also well settled that the insurer's obligation to defend a suit against its insured, whether groundless or not, must be measured by the allegations contained in the complaint rather than by the outcome of the suit. Thus an unambiguous exclusionary provision of a policy fully justifies the insurer's refusal to defend an action in which the complaint, petition or declaration affirmatively alleges circumstances warranting invocation of such a contractual exclusion.

Smith v. Insurance Co. of Pennsylvania, *supra*, 161 So.2d at 918.

■ G. & T. argues that the endorsement was not an effective amendment to the policy because, although it was attached to the policy it was not referred to on the face of the policy. The endorsement, attached to the policy and including ample reference to identify it with the policy, was, however, an effective amendment to the policy under Lou-

isiana law. *See* Goldman v. North British Mercantile Insurance Co., 47 La.Ann. 223, 19 So. 132 (La.S.C.1896).

■ G. & T. also urges this Court to interpret the policy in light of Employers' alleged promise to "duplicate the coverage" provided by a policy issued by another insurance company. In view of the clear and unambiguous wording of the Employers policy issued to G. & T., we cannot rewrite the terms of the policy to fulfill an alleged oral promise.

G. & T. also asks us to read the word "such" in the second clause of the endorsement as referring to the vehicles covered by the first clause of the endorsement. This, however, is a strained interpretation of the language. The word obviously refers to the vehicles "as are further designated by ('Z')" and modifies the second clause of the endorsement. Accepting G. & T.'s reading as correct, however, its reliance on this reading is misplaced. For even if "such" refers to the vehicles described in the first clause of the endorsement, all of the G. & T. cranes were designated as "Spec[ial] Equip[ment]" on the separate schedule and, thus, were covered by the first clause of the endorsement.

Finally, G. & T. argues that, even assuming the duty to defend did not arise because of an unambiguous exclusion in the allegations of the complaint, Employers had a duty to defend after the district court denied Employers' motion for summary judgment. G. & T. would interpret this denial of a motion for summary judgment for the insurer, even though the denial was issued without written reasons, as a determination by the district court that there was, at the very least, a question of whether there was coverage under the policy. The denial of a motion for summary judgment, G. & T. argues, represented a determination by the district judge that the allegations of the complaint did not "unambiguously exclude coverage". Therefore, G. & T. concludes, the duty to defend was

2. Although it is unclear which crane caused the injury to Bandy, all of the G. & T. cranes are listed in the schedule and, thus, are subject to the endorsement.

triggered by the denial of the motion for summary judgment and the implicit assessment which that denial represented. Assuming, as G. & T. apparently contends, that the denial of the motion for summary judgment was a decision that coverage was doubtful and an implicit decision that, under Louisiana law, the duty to defend existed. The insurer, however, still maintained the option to ignore the district judge's assessment of the allegations and refuse to defend based on its own assessment of the allegations of the complaint. If the district judge's assessment were ultimately upheld and the duty to defend did exist because of the allegations, the insurer would be liable for the expenses of the defense. He would have gambled and lost. If, however, it were, as in the present case, ultimately held that the district judge was incorrect, the insurer would not be liable for the expense of the defense because, under Louisiana law, the duty to defend was never present.

G. & T. relies on the decision in Parks Equipment Co. v. Travelers Insurance Co., E.D.La.1968, 293 F.Supp. 1206, in support of its contention that the duty to defend may arise on the basis of a ruling by the court after the commencement of the litigation. In *Parks* an injured plaintiff sued an insured defendant in the state court. The insured defendant sought to require its insurer to defend the suit. The insurer filed "exceptions of no cause of action" based on no coverage. The trial court dismissed the insurer, but, on appeal, the Louisiana First Circuit Court of Appeal reversed and remanded the case for trial, holding that there arguably was coverage.[3] The trial resulted in a decision in favor of the insured defendant. The insurer, however, sought review of the previous decision as to "no cause of action", but the Louisiana Court of Appeal refused to overturn the earlier decision.[4]

The insured then sued in federal court to recover the expenses of defending the

3. The Court of Appeal held:

   To conclude that the exclusion of products hazard effectively relieves Defendant of all claims asserted by Plaintiff we must, in order to reach such determination, decide that the language of the contract of insurance providing such exclusion clearly and unambiguously so provides, for it is well settled in Louisiana that if the language of the contract of insurance is ambiguous such ambiguities must be construed in favor of the insured and against the insurer.

        *       *       *       *       *

   [W]e are of the opinion that under the broad coverage of the 'Insuring Agreements—' . . . the petitions set forth a cause of action against Appellee for coverage, and Travelers is a proper party defendant. Therefore, the exceptions of no cause of action filed by The Travelers Insurance Company levelled at Plaintiff's original and supplemental petitions and the Third Party petition of Humble Oil and Refining Company are overruled.

   Thibodeaux v. Parks Equipment Co., 140 So.2d 215, 218–220 (La.App.1942). The Louisiana Supreme Court denied writs of certiorari.

4. In view of the holding of this court that it is bound by the majority opinion of a

previous panel of this Court (see Thibodeaux v. Parks Equipment Co., La.App., 140 So.2d 215) which overruled an exception of no cause of action based upon Travelers' contention that the policy provided no coverage and Travelers can only obtain a reversal of this decision by application to the Supreme Court upon final judgment herein on the merits, we will reserve the right requested by Parks Equipment Company.

Thibodeaux v. Parks Equipment Co., 185 So.2d 232 (La.App.1965). The right referred to was the right of Parks Equipment Company to proceed against Travelers for the cost of the defense which Travelers had refused to furnish. On rehearing the Court of Appeal said:

   The prior ruling by this court on the question presented is the law of the case insofar as this court is concerned.
      *   *   *
   "It is, therefore, well established that the issue decided by this court in its prior decision is the law of the case insofar as this court is concerned, and said issue cannot be considered a second time by this court. The matter may, however, be considered by Supreme Court on writs of certiorari."

185 So.2d at 267–268. The Louisiana Supreme Court again denied writs of certiorari.

**906**

state court suits. The district court held the insurer liable for the expense of the state court defense. The district court said:

> It is the opinion of this Court that under Louisiana law, if the petition filed in the Thibodeaux case stated, on its face, a cause of action, there immediately arose an obligation on the part of Travelers to defend. But even if it were conceded that the obligation was not absolute at that time, it surely became absolute when Travelers' exception of no cause of action was heard and overruled by the Louisiana First Circuit Court of Appeal and the case remanded to the Trial Court for trial on its merits. That the decision of the Court of Appeal was final insofar as the Thibodeaux petition stating a cause of action is concerned cannot be disputed. That decision stands today, unaltered, as the law of that case. The Louisiana Court of Appeal refused, on appeal, and again on rehearing, to alter that decision, and the Louisiana Supreme Court twice refused to grant writs of certiorari for the purpose of reviewing that decision.

293 F.Supp. at 1212.

The decision in *Parks* does not, however, persuade us that G. & T. is entitled to recover in the instant suit because the trial court here denied a motion for summary judgment filed by Employers. First, the denial of the motion for summary judgment was rendered without written reasons and is not, therefore, to be regarded as necessarily passing on the question of coverage. Second, assuming the denial was intended as a decision that coverage existed or was not unambiguously excluded, we have, in the present appeal, held that decision to be in error. Finally, the district court decision in *Parks*, although holding for the insured, is not before us at this appeal and, therefore, we need not face the issues raised in *Parks* including (1) whether a district court should accept the state court decision on the "no cause of action" exceptions as binding in federal court on the issue of the duty to defend or whether the federal court should independently review the allegations of the complaint to determine the duty of the insurer to defend, (2) whether the state court appellate decision was in fact a determination of the precise issue raised in federal court; or (3) whether the allegations in the original complaint triggered the duty to defend.

The allegations of Bandy's complaint did not require Employers to provide a defense. The ruling by the district judge on Employers' motion for summary judgment did not require a defense.

Reversed.