261 So.2d 615

George L. DOSS

v.

AMERICAN VENTURES, INC. and Travelers Insurance Company.

No. 51592.

May 1, 1972.

Sessions, Fishman, Rosenson, Snellings & Boisfontaine, Robert E. Winn, New Orleans, for plaintiff-applicant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John C. Combe, Jr., New Orleans, for defendants-respondents.

McCALEB, Chief Justice.

George L. Doss instituted the instant action to recover workmen's compensation benefits for total, permanent disability alleged to have resulted from an injury sustained while he was employed as a painter on a building owned by the defendant, American Ventures, Inc. Travelers Insurance Company, American's compensation insurer, was also named as a defendant.

The district court rendered judgment in favor of plaintiff for total, permanent disability. On the original hearing in the Court of Appeal the judgment was affirmed. However, the court granted a rehearing and, on the rehearing, remanded the case for further evidence. 224 So.2d 470. On the remand the district court, conforming to the holding of the second opinion of the appellate court, dismissed plaintiff's suit. This judgment was affirmed. 248 So.2d 358.

We granted certiorari, 259 La. 753, 252 So.2d 453.

The agreed facts out of which this litigation arose are as hereafter set forth. American was the owner of a cinder-block building, located in the City of New Orleans. Except for a rear wall, the structure was completely demolished by Hurricane Betsy in 1965. Thereafter, American undertook to reconstruct the building, but did not employ a general contractor. Instead, it, through its officers, supervised its construction by the various sub-contractors with whom it contracted directly.[1] When the building was almost completed, American contracted with a Mr. Gould to paint it. Gould employed plaintiff to help with the painting, and the latter was injured while so employed.

Prior to its demolition and after its reconstruction the building, which was the only one owned by American, was rented to various commercial establishments—barber shop, beauty parlor, doctor's office, et cetera.

The principal defense to the suit[2] was, as stated in defendants' brief to the Court of Appeal, that "the sole business activity of this corporation was merely to collect rents from the only building owned by the said corporation. It did not at any time engage in any construction activities of any nature and the sole purpose of the cor-

---

1. In effect, it was its own general contractor. When one of the officers of the corporation (Salvatore Ciolino) was asked to name the contractors who performed the work, he responded that he and a

brother (also a corporation officer) did it.

2. It is the only defense now in contest.

poration was to act as a legal entity for the ownership of this commercial building. * * * Although the articles of incorporation would allow the corporation to engage in construction activities, it is more than obvious from the record of this case that the corporation did not at any time engage in such activities and more particularly were not engaged in the construction or repairing business at the time of the accident."

The plaintiff, on the other hand, contended that the business of American "included not only management of the property, but also its construction, repair, remodeling for different tenants, and all matters relating to the operation of the property."

Thus, the issue, as presented, was purely a factual one.

However, in determining the merits of the controversy the Court of Appeal declined to pass on this factual question in remanding the case on rehearing. Rather, it decided that, as a matter of law, when an owner leases a commercial building, it must repair and otherwise maintain the property; that, consequently, "ordinary maintenance, repair and painting (including repair of ordinary storm damages of a minor nature) is normally a part of the business of renting ones building", and that, therefore, the owner of such a rented building is engaged in the business of repairing buildings as an integral element of

his business operation of leasing the building. It concluded that this was a hazardous feature of the business of leasing the building, so that an employee injured while engaged in this feature of the business, would be entitled to compensation, whether he was employed directly or through a contractor.

The court further held that construction is not ordinarily part of the business of owning and leasing a building, and that an employee injured while constructing a building to be rented would not be entitled to compensation. On finding, after the remand, that the work being undertaken was construction and not ordinary maintenance, the court affirmed the dismissal of plaintiff's suit.

■ Although agreeing with the result reached by the Court of Appeal (for the reasons hereafter discussed) the defendants in their brief say:

"Respondent takes issue with the rationale of the original opinion of the Fourth Circuit Court of Appeal and also its opinion on original rehearing which states in effect that the maintenance and repair of a commercial building falls within the trade, business or occupation of the owner of the building as a matter of law. Respondent urges to the Court, * * * that this concept is contrary to all existing prior jurisprudence relating to the subject."

This observation is well founded. In one of our more recent decisions on this issue, Ponthieux v. Lindsay, 254 La. 647, 226 So.2d 482 (1969), it was contended that the defendant therein (an insurance agent) was liable in compensation for injuries to plaintiff which were sustained when the latter was engaged in moving buildings for the defendant, it being asserted that the buildings were to be rented by the defendant for profit. We found that plaintiff was supervising the activity for his father and not for profit for himself. But we further said:

"If, indeed, he intended to use the buildings for his own profit *the only business he would have been engaged in was that of the rental of dwellings, and this is not a hazardous occupation.*

"Nevertheless, the plaintiff insists that when a person employs contractors to perform work requiring the hiring of laborers to engage in a hazardous engagement, and it inures to the benefit of his otherwise non-hazardous business, such work is part of his regular occupation which becomes hazardous; and that, consequently, the principal is liable for compensation benefits to the employees.

\* \* \* \* \* \*

"An examination of the cases reveals that *the arguments presented by the plaintiff herein are not new.* They have been urged in this court on several occasions and also in the various Courts of Appeal. *Consistently they have been rejected.*" (Emphasis ours)

We discussed the numerous cases of this Court and of the Court of Appeal [3] which had adhered to the principle set forth in the leading case on the subject, Shipp v. Bordelon, 152 La. 795, 94 So. 399 (1922), wherein it was held that:

"\* \* \* it is not enough that the employé shall be performing work of the character falling within the designated trades, businesses, or occupations, but it must be done 'in the course of the employer's trade,' etc., in certain trades, businesses, etc. In other words, the work must be of that character, *and* the employer must be engaged in that line of work *as a trade, business, or occupation, in order that the act may apply.*" (Emphasis ours)

See also Fields v. General Casualty Co. of America, 216 La. 940, 45 So.2d 85 (1950), where, in a footnote, we observed that:

"1. It is well settled that it is the nature of the employer's business and not the particular work done by the employee which is the determinative factor in suits for compensation. Paragraph 2 of Section 1 of Act No. 20 of 1914; Shipp v. Bordelon, 152 La. 795, 94 So.

---

3. For an excellent discussion of the issue and an analysis of many of the pertinent cases see Edwards v. Stafford, La.App., 153 So.2d 106 (1963).

399; Kern v. Southport Mill, 174 La. 432, 141 So. 19 and Hogan v. T. J. Moss Tie Co., 210 La. 362, 27 So.2d 131."

■ Of course, if an employer undertakes repairs on premises used by him to carry on a hazardous business or occupation, an employee injured while engaged in such work is covered by the compensation act because he is engaged in hazardous work in the course of his employer's hazardous business or occupation. This was the holding in Speed v. Page, 222 La. 529, 62 So.2d 824 (1952).[4]

■ Nor can it be said that, as a matter of law, whenever a person constructs or reconstructs his own building to be rented or used commercially he is, or is not, in the construction business. There are some cases in which it has been held that, under the particular circumstances presented, the building owner was not so engaged as a business and, hence, compensation was denied. See Lay v. Pugh, 9 La.App. 183, 119 So. 456 (1928) cert. den.; and Effler v.

Edwards, La.App., 142 So.2d 599 (1962) cert. den. Rather, as urged by counsel for all of the litigants herein, whether such employer is so engaged as a business, trade or occupation is a question of fact, depending on the circumstances of each case. Counsel for defendants correctly states in their brief, "The crux of the issue, however, is that *whether or not in a given case maintenance and repair work or construction, renovation and repair work fall within the trade, business or occupation of an owner-lessor or lessee of commercial premises is a question of fact* which must be determined by the evidence adduced in each case." (Emphasis ours)

■ examining the record of the instant case we think it manifest that American was engaging in the business of construction work when plaintiff was employed by a subcontractor to paint the reconstructed building. For the evidence reveals that, although American employed the services of a general contractor to con-

---

4. The Court of Appeal erred in holding that the Speed case supported its conclusion that employees making repairs on *all* business establishments would be covered by compensation simply because the repairs were in furtherance of the business. It failed to note that in the Speed case, the employer's occupation was hazardous.

It also erroneously cited Richard v. United States Fidelity and Guaranty Co., 247 La. 943, 175 So.2d 277 (1965), in support of its conclusion herein. There, an employee, injured while repairing rental property, was held to be entitled to com-

pensation benefits. However, the award was made on the finding that the employer had numerous business enterprises, not divided; some were hazardous, others were not. The employee performed many hazardous duties and was exposed to and frequently brought into contact with the hazardous features of the hazardous businesses (one was a cotton gin). Consequently, he was at all times covered by the compensation law, even though he was working in one of the non-hazardous phases of the employer's businesses at the time he was injured.

struct the building originally, in 1961, it did not do so when it endeavored to rebuild in 1965[5] and, thus, effectively became its own general contractor. Indeed, the record shows that, in seeking reimbursement from its insurer for costs incurred in rebuilding the structure, American claimed, over and above its actual expenses (which included liability and workmen's compensation insurance), 10 per cent of the total, actual costs. It was explained by Salvatore Ciolino that this charge was made for the work and services of the corporation's officers (himself and his brother) in supervising the construction.

Under these circumstances there can be no doubt but that the corporation was engaged in the construction project as a business or trade when the plaintiff was injured, despite the assertions of its officer (Ciolino) who testified that the corporation merely owned the property and collected rents. The fact that plaintiff was hired by the painting sub-contractor does not relieve the corporation of its ultimate liability as a

principal. R.S. 23:1061.[6] Plaintiff is entitled, therefore, to receive from American and its compensation insurer workmen's compensation benefits for the injury sustained by him while employed in American's construction (or reconstruction) project.

For the reasons assigned, the judgment of the Court of Appeal is reversed and it is now ordered that the initial judgment of the district court (rendered March 20, 1968) awarding plaintiff compensation at the rate of $35 per week, beginning November 17, 1965, for a period not to exceed 400 weeks, with interest at the rate of 5 per cent per annum on each past due installment from its due date until paid, plus all costs for medical treatment received by plaintiff incurred as the result of the injury sued on, be reinstated and made the judgment of this Court.

BARHAM, J., concurs.

SUMMERS, J., dissents.

5. Not too long after the building was reconstructed American also built, itself, an addition thereto.

6. This section provides, among other things, that when a person undertakes to execute any work, which is part of his trade, business or occupation and contracts with another person for the execution of any part of the work undertaken, the former shall be liable for workmen's compensation benefits to the employees of the latter.