326 So.2d 601 (1976)
Rudolph EVANS
v.
Gabe NAIHAUS.
No. 6802.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
*603 Charbonnet & Charbonnet, New Orleans, Robert P. Charbonnet, New Orleans, for plaintiff-appellee.
Caryl H. Vesy, New Orleans, for defendant-appellant.
Before LEMMON, GULOTTA and BOUTALL, JJ.
LEMMON, Judge.
In this appeal from a judgment awarding workmen's compensation benefits to plaintiff, who was injured while repairing the roof of a building owned by defendant, the principal issues as to defendant's liability are whether plaintiff was an employee performing services in the course of defendant's trade, business or occupation within the contemplation of R.S. 23:1035 and whether that trade, business or occupation was hazardous.
Defendant was a furniture salesman who derived substantial additional income from rental properties, principally from eight wooden two-family dwellings which because of age required considerable maintenance.
Plaintiff, 72 years old at the time of the accident, had been a plasterer by trade, but over the five-year period prior to the accident was generally engaged in performing light carpentry, plastering and painting.
Defendant called upon plaintiff to clean the premises and do needed repairs when a tenant moved, as well as to repair conditions about which tenants complained. Plaintiff normally performed these services with his own tools, but defendant rented special equipment as required and purchased the materials that plaintiff determined would be needed for a particular job. Defendant paid plaintiff on an hourly basis and also paid him an additional amount (determined at a lesser hourly rate) when a helper was required, the helper being hired and supervised by plaintiff. An average job required two to three hours, and defendant called upon plaintiff for these jobs two or three times almost every week.
During the five years preceding the accident defendant collected approximately $10,000.00 annually in gross rental income from the eight properties (an amount roughly equal to his wages as a salesman), and he expended between $1,100.00 and $2,500.00 per year on maintenance and repairs, excluding electrical plumbing and other specialized work.[1] Defendant handled the rentals and rent collections personally, but he hired laborers (usually plaintiff) to perform the maintenance and repairs.
Defendant had no personal skill or knowledge in construction, repair or maintenance work, and he did not ever hire plaintiff or anyone else to perform this type of work for others. Neither did defendant supervise or direct any work performed by plaintiff on properties owned by defendant.
Plaintiff performed the same type of services for others, although he stated he didn't work for anyone else in the year of the accident.

*604 DEFENDANT'S LIABILITY
Plaintiff's services were performed in connection with defendant's business of renting residential property, which was one of two businesses in which defendant engaged. The determination of defendant's liability involves the determination of whether plaintiff's services were performed "incidental to his employment in the course of his employer's trade, business, or occupation . . . ." R.S. 23:1035. The usual test is whether the services constituted an integral part of defendant's regular business; that is, whether the services were substantial, essential and recurring. Of necessity, the test is a relative one, depending upon the facts and circumstances of each case. Doss v. American Ventures, Inc., 261 La. 920, 261 So.2d 615 (1972). See also Broussard v. Adams, 270 So.2d 913 (La.App. 3rd Cir. 1972), which found on the facts that defendant was engaged in the business of constructing houses for rental purposes.
A major purpose of the Workmen's Compensation Act was to remove the burden of industrial and commercial accidents from the victim and to allocate the cost of these accidents over the consumers of the product or the customers of the business. The act was thus intended to apply to workers whose services form a regular and continuing part of the business or cost of the product. On the other hand, the act was not intended to impose potential liability on a businessman for every worker who performs services on the business premises.
Ordinary maintenance and repair work is an essential part of any building rental business.[2] The determination as to whether the person who performs the maintenance and repair work is an employee in that business for purposes of compensation coverage depends upon whether the work is of a substantial and recurring nature.
The record established that defendant's rental business required him to employ someone to perform substantial maintenance and repair services on a regular basis and that he usually employed plaintiff for these services. We conclude that under the facts and circumstances of this case defendant is liable to plaintiff who was injured while performing maintenance and repair services on defendant's rental property.[3]
We mention, for completeness, defendant's argument that plaintiff was an independent contractor. In the determination of the status of a person as either independent contractor or employee, at least for purposes of workmen's compensation, the nature of the claimant's work in relation to the regular business of the employer has taken precedence over other relevant factors.[4] Larson, Workmen's Compensation *605 § 43.50 (Desk ed. 1974). This important factor was discussed above. Nevertheless, even if plaintiff were determined to be an independent contractor, the exception in R.S. 23:1021(6) as to one who spent a substantial part of his work time in manual labor preserves his eligibility for benefits.
As to defendant's contention that the business of renting property is not hazardous, we have already concluded that maintenance and repair of defendant's property was an essential, substantial and recurring part of that business. This conclusion has the effect of determining that at least a part of defendant's business was hazardous, since work in any of the building trades in the repair of any building is included in the statutory list of hazardous businesses. Inasmuch as plaintiff's employment was incident to that phase of defendant's business, his injury in the course of that employment entitles him to compensation benefits.

AWARD OF BENEFITS
In the June, 1973 accident plaintiff sustained a fractured hip, which was surgically repaired by placement of three internal fixation pins across the fracture. After a period of hospitalization, the hip healed uneventfully, and medical treatment was discontinued about five weeks after the accident.
As of March, 1974, plaintiff exhibited a full, painless range of motion and reported to the treating orthopedic surgeon that he had only "slight soreness" in the hip. The doctor opined that plaintiff, from an orthopedic standpoint, could perform any activity that he did prior to the accident and specifically could do "ordinary day to day maintenance type carpentry work". On the basis of the overall considerations that the pins remained in place, that abundant soft tissue ossification had developed, and that "very mild tightness" was exhibited at the extremes of the range of motion, the doctor estimated a 10 to 15% permanent partial disability of the lower extremity, which was not likely to change. He advised plaintiff to limit his climbing, not because of danger, but because the stress on the hip was likely to produce soreness after continued activity of this type. The doctor admitted the possibility of discomfort after working in certain positions, but declined to classify this as substantial pain.
The medical evidence does not support a finding of total and permanent disability. The percentage disability was physiological, not functional, and the uncontradicted medical testimony established that any permanent impairment of function was not totally disabling. The medical evidence, however, does support an award for permanent partial loss of the use or function of the leg.[5] Under R.S. 23:1221(4) (h) and (o) plaintiff is entitled to 175 weeks of benefits at the rate of $12.50 per week.[6]
The doctor also testified that he would render a "final verdict" upon plaintiff's reexamination, scheduled for 18 months after the accident (which was after trial but before the record was filed in this court). Either party may apply for a modification if the incapacity increases or decreases after rendition of judgment. R.S. 23:1331.
*606 Accordingly, the judgment of the trial court is amended to award benefits for 175 weeks (rather than 500 weeks) at the rate of $12.50 per week (rather than $17.50). As amended, the judgment is affirmed.
Amended and affirmed.
GULOTTA, Judge (concurring).
I concur with the result reached by the majority. While it appears, at first impression, that a fracture of the hip requiring the insertion of three pins would render a 73 year old laborer, engaged in carpentry work, permanently and totally disabled, the uncontroverted medical evidence supports the conclusion that the disability is not of a total nature. The medical expert indicated that Evans is able to return to his pre-injury occupation and to resort substantially to the same duties carried out by him prior to the injury. The doctor further testified that the injury would not result in plaintiff's suffering substantial pain. According to the doctor, perhaps some discomfort might result, but not substantial pain.
LSA-R.S. 23:1221(3) provides compensation payments not beyond a 300 week period for any injury producing partial disability to do work of any reasonable character. This section further provides compensation at the rate of 65% of the difference between the wages at the time of the injury and the wages which the injured employee is able to earn thereafter during the period of disability. In the instant case, there is no showing that any difference exists between pre-injury earnings and post-injury earnings. Under the circumstances it does not appear that LSA-R.S. 23:1221(3) is applicable. In my opinion, the majority properly applied LSA-R.S. 23:1221(4) (h) (o) providing benefits for permanent partial loss of the use or function of the leg.
NOTES
[1] These annual amounts, reported on income tax returns, were not broken down into labor and material expenses.
[2] Several cases cited in brief involve maintenance and repair work to a defendant's home, which does not entail business activity at all. However, maintenance of a building rented for income purposes is an essential part of the business of renting.

In this respect we distinguish Ponthieux v. Lindsay, 254 La. 647, 226 So.2d 482 (1969), which involved "the mere isolated use of a casual contractor to move and repair some rental units . . . ." The court specifically found that the defendant had not undertaken to move and repair the buildings as a business venture for profit, but rather to assist his infirm father (who was contractually obliged to remove the buildings within a stipulated time) after a mover had defaulted on a moving contract with the father.
[3] We acknowledge the problem asserted by defendant that he was unable as a practical matter to obtain such services from a firm with compensation coverage. This difficulty, however, if accurate, has no relevance to the determination of an injured employee's right to compensation benefits.
[4] Control of the details of the work is the most important factor in the determination for purposes of vicarious liability, which involves injuries inflicted by the person alleged to be an employee while performing activities for the employer. Right of control, however, is not nearly so important for purposes of compensation coverage, which involves injuries inflicted upon the person alleged to be the employee, usually by others who may or may not be subject to control by the employer.
[5] The record does not establish how long plaintiff was totally disabled between his last treatment in July, 1973 and his next examination in March, 1974. He would nevertheless not be entitled to an award for temporary total disability during his convalescence in addition to benefits under the schedule for permanent partial loss of the use or function of a member. Malone, Louisiana Workmen's Compensation Law and Practice § 282 (1951); Hall v. Pipe Line Service Corp., 233 La. 821, 98 So.2d 202 (1957).
[6] The amendment to R.S. 23:1202, increasing minimum benefits to $17.50, went into effect after plaintiff's accident.