Melanie BAUGHMAN, et al.

v.

SEARS, ROEBUCK & COMPANY, et al.

Civ. A. No. 77–2489.

United States District Court,
E. D. Louisiana.

Nov. 17, 1981.

Theodore A. Mars, Jr., and W. W. Young, III, Young & Mars, New Orleans, La., for plaintiff Melanie Baughman.

William J. Hamlin and Michael R. O'Keefe, III, Monroe & Lemann, New Orleans, La., for defendant Sears, Roebuck & Co. and Singer Co.

Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, La., for third-party defendant Jason F. Berry.

James C. Murphy, Jr., Murphy & Simon, New Orleans, La., for intervenor Home Insurance Co.

## MEMORANDUM OPINION

ROBERT F. COLLINS, District Judge.

### FINDINGS OF FACT

· Third party plaintiffs, Sears, Roebuck & Company and Singer Company, both foreign corporations authorized to do business in the State of Louisiana (hereinafter jointly referred to as "Sears & Singer"), filed this third party action against Jason Berry, endeavoring to recover by way of contribution from him, as joint tortfeasor, the sum of $90,000.00. Said amount represents one-half of the sum expended by Sears & Singer in compromising a wrongful death claim resulting from the electrocution of Nelcie Baughman. Jason Berry instituted an alternative third party action against his insurers, National Surety Company (hereinafter referred to as "National") and Home Indemnity Company (hereinafter referred to as "HIC"). Berry contends that coverage was provided him for the demands hereinbefore asserted by Sears & Singer, either under HIC's policy covering workmen's compensation claims or under National's policy covering general liability claims.

The pertinent facts are as follows: Berry hired Nelcie Baughman and Darold Pritchard to do remodeling and renovation work on his rental property located at 4909 Coliseum Street, New Orleans, Louisiana (hereinafter referred to as the "rental property"). Berry rented said premises through a real estate agent who handled the routine maintenance of the rental property. Baughman and Pritchard, who had previously constructed a house for Berry in Mississippi, installed a new roof on the rental property, hung wall paneling, laid new flooring, and did minor electrical work. Baughman and Pritchard were paid by the hour for their services. They furnished their own tools, although Berry purchased all the materials for the needed repairs. Berry did not supervise or direct any work performed by Baughman and Pritchard on the rental property; rather, he deferred to their expertise on the need for repairs. On August 13, 1976, Baughman was electrocuted while attempting to drill an electrical outlet in the rental property with a Sears Craftsman drill manufactured by Singer.

Berry contends that he was Baughman's employer at the time of the accident, therefore, he cannot incur tort liability to any party as a result of Baughman's death since the exclusive nature of employees' remedies under workmen's compensation precludes such a result.

Sears & Singer contend that the exclusive remedy provision of the Workmen's Compensation Act, La.Rev.Stat.Ann. § 23:1021 et seq. (West), as amended (hereinafter referred to as the "Act"), is not a bar to their claim for contribution from a joint tort-feasor since Baughman was an independent contractor not covered by the Act.

### DISCUSSION

#### I. *Sears & Singer vs. Berry*

La.Rev.Stat.Ann. § 23:1032 (West), as amended, provides that an employee's remedy, where an employee is entitled to compensation under the Act, shall be compensa-

tion as provided by the Act, exclusive of all other rights and remedies.[1] LSA–R.S. 23:1035 defines the types of employees covered under the exclusive remedy provision of LSA–R.S. 23:1032:

§ 1035. *Employees covered.* The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his own trade, business or occupation, or in the course of his employers trade, business or occupation . . . .

Thus, the determination of Berry's liability involves the question whether the decedent's services were performed incidental to Berry's business of renting residential property.[2] More specifically, the test is whether the services constituted an integral part of Berry's rental business; "that is, whether the services were substantial, essential, and recurring. Of necessity, the test is a relative one, depending upon the facts and circumstances of each case." *Evans v. Naihaus,* 326 So.2d 601, 604 (La.App.1976) *citing, Doss v. American Ventures, Inc.,* 261 La. 920, 261 So.2d 615 (1972).

*Evans v. Naihaus* involved an appeal from a judgment awarding workmen's compensation benefits to a plaintiff who was injured while repairing the roof of a building owned by a furniture salesman who derived substantial additional income from rental properties. The court held that claimant's injuries were sustained while performing services in the course of the defendant's trade, business, or occupation within the contemplation of LSA–R.S. 23:1035; thus, claimant was entitled to compensation from the building owner. The court reasoned:

Ordinary maintenance and repair work is an essential part of any building rental business. The determination as to whether the person who performs the maintenance and repair work is an employee in that business for purposes of compensation coverage depends upon whether the work is of a substantial and recurring nature.

The record established that defendant's rental business required him to employ someone to perform substantial maintenance and repair services on a regular basis and that he usually employed plaintiff for these services. We conclude that under the facts and circumstances of this case defendant is liable to plaintiff who was injured while performing maintenance and repair services on defendant's rental property.

326 So.2d 601, 604. In this instance, however, the services Baughman and Pritchard were rendering at the time of the accident cannot be considered ordinary maintenance work which was always contracted out by Berry's real estate agent; instead, the services involved major renovation and repair work which were contracted out by Berry himself. Further, there is no evidence that the repair and renovation work performed by Baughman and Pritchard was of a recurring nature to be considered part of Berry's rental business.

Having determined that decedent at the time of the accident was not an employee performing services incidental to Berry's

**1.** § 1032. Exclusiveness of rights and remedies; employer's liability to prosecution under other laws

The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who under-

takes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

**2.** The record established that Berry had rented for profit the rental property for approximately twelve (12) to thirteen (13) years.

rental business, the court must next consider decedent's status as an independent contractor. The term "independent contractor" is defined in LSA–R.S. 23:1021(5):

(5) "Independent Contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter.

Baughman and Pritchard were employed by Berry at an hourly rate to do construction and remodeling work on his rental property. This work was the first and only work performed by the men on said premises. Baughman and Pritchard furnished their own tools. Berry had no control as to the means by which the men made the necessary repairs and renovations, but rather had control as to the results of their work only. Applying the facts mentioned, the court is convinced that decedent was an independent contractor as defined in the above provision. The court must next consider whether he was an independent contractor who was covered under the Act.

LSA–R.S. 23:1021(5) permits workmen's compensation coverage of independent contractors when a substantial part of their work time is spent in manual labor in carrying out the terms of their service contract, and the work performed by them is a part of their principal's trade, business, or occupation. *Lushute v. Diesi*, 354 So.2d 179 (La.1978). In this case, it is clear that just prior to the accident Baughman was performing a substantial part of his work time in manual labor in carrying out the terms of his service contract with Berry. The only remaining issue is whether decedent's services were part of Berry's trade, business

or occupation. This is the same issue the court entertained in trying to determine whether decedent was an employee within the contemplation of LSA–R.S. 23:1035. There, the court concluded that the services performed by decedent were not part of Berry's property rental business. Logic and consistency dictate that such determination be controlling on this same question, although presented under LSA–R.S. 23:1021(5).

The above determination, however, does not end the court's inquiry.

In *Doss v. American Ventures, Inc.*, 261 La. 920, 261 So.2d 615 (1972), a building owner-lessor was held liable for compensation to an injured painter when the owner-lessor undertook to reconstruct a building destroyed by a hurricane. The Louisiana Supreme Court did not ground its decision on any inquiry as to whether construction or reconstruction of the building was a part of the business of commercial renting. It predicated its holding on a finding that, in undertaking to reconstruct its building, the owner-lessor "effectively became its own general contractor." The court concluded that "under [those] circumstances there [was] no doubt but that the corporation (owner-lessor of the building) was engaged in the construction project as a business or trade when the plaintiff was injured . . . ." 261 So.2d at 619. The court found this to be true even though the single reconstruction was the only enterprise in which the owner-lessor engaged.

Similarly, in *Slocum v. Lamartiniere*, 369 So.2d 201 (La.App.1979), a grocer was held liable for compensation to a carpenter who was injured while doing carpentry work on the grocer's new store. Determining that the grocer had engaged in a second business as a contractor, the court reasoned:

Clearly, Lamartiniere was not building his new store as a hobby. Whether the building be regarded as a continuation of the grocery business or a venture into the construction business, it was a commercial enterprise in every respect and those employed for the labor are covered by the compensation act. *Speed v. Page*, 222 La. 529, 62 So.2d 824 (1952); *Doss v. Ameri-*

*can Ventures, Inc.*, 261 La. 920, 261 So.2d 615 (1972). Here, as in *Doss*, Lamartiniere undertook to contract the construction of his new store and could be considered engaged in a second trade or business as a contractor. It is well established that an individual may be engaged in more than one trade or business. *Broussard v. Adams*, 270 So.2d 913 (La. App. 3 Cir. 1972); *Evans v. Naihaus*, 326 So.2d 601 (La.App. 4 Cir. 1976).

The trial court was clearly wrong in deciding that Slocum's employment by Lamartiniere was not a part of the latter's trade, business or occupation.

369 So.2d at 203.

*Doss* and *Slocum* hold that if an owner-lessor engages in substantial construction or renovation work on his rental property, the circumstances may legally place him in the trade, occupation, or business of a building contractor. Guidance in applying this holding is provided by the Louisiana Supreme Court in *Doss*:

> Nor can it be said that, as a matter of law, whenever a person constructs or reconstructs his own building to be rented or used commercially he is, or is not, in the construction business. There are some cases in which it has been held that, under the particular circumstances presented, the building owner was not so engaged as a business and, hence, compensation was denied. *See Lay v. Pugh*, 9 La.App. 183, 119 So. 456 (1928) *cert. den.*; and *Effler v. Edwards*, La.App., 142 So.2d 599 (1962) *cert. den.* Rather, as urged by counsel for all of the litigants herein, whether such employer is so engaged as a business, trade or occupation is a question of fact, depending on the circumstances of each case.

369 So.2d at 207.

■ In light of *Doss* and *Slocum*, it is apparent that Berry became engaged in a second trade or business as a building contractor. The record establishes that since 1974 Berry had contracted with Pritchard and Baughman to build a house and do major construction on two others, including the rental property.[3] There is no doubt that these undertakings, were of sufficient size to justify characterizing Berry as a building contractor. The amount of work performed on Berry's rental property alone was substantial renovation work, which included replacing the roof, hanging paneling, and rebuilding the floor. In this court's judgment, the foregoing activities indicate a building enterprise of sufficient significance to bring this case within the rule of *Doss* and *Slocum*. Thus, the contractual relationship between Baughman and Berry was one between an independent contractor and a building contractor. Hence, decedent was an independent contractor who was entitled to receive workmen's compensation benefits pursuant to LSA–R.S. 23:1021(5), since the record establishes that a substantial part of his work time was spent in manual labor in carrying out the terms of his service contract with Berry, and the work performed by him was a part of Berry's business as a building contractor.

For the foregoing reasons, the court holds that the liberal social objectives of the workmen's compensation law requires the imposition of compensation liability upon Berry in favor of decedent or his survivors. As such, Berry cannot be found to have tort liability to any party as a result of Baughman's death since the exclusive remedy provision of the workmen's compensation law precludes such a result. Consequently, the third party action brought by Sears & Singer against third party defendant, Jason Berry, must be dismissed.[4]

## II. *Berry vs. HIC & National*

Berry instituted a third party action against his insurers, National and HIC,

---

**3.** Compare *Doss* and *Slocum* where the courts, relying upon the fact that the building or rebuilding of the structures were sizeable enterprises, concluded that the owners were engaged in construction as a business even though the single construction or reconstruction was the only enterprise in which they engaged.

**4.** The dismissal of Sears & Singer's third party action against Jason Berry makes moot the issue concerning contribution amongst joint tortfeasors and the underlying issue of solidary obligation which was raised and argued by the parties.

claiming that his insurers provided coverage to him for the demands for contribution by Sears & Singer. In addition to seeking indemnification from his insurers for any liability he may owe to Sears & Singer, Berry requests from his insurers his cost to defend against the suit brought by Sears & Singer, including reasonable attorney fees. Berry bases this demand on his insurers' alleged failure to defend him against the contribution claim brought by Sears & Singer.

HIC asserts a noncoverage defense. Berry argues that HIC is estopped from making such an argument since it settled the original Mississippi workmen's compensation claim brought by decedent's survivors. The court finds Berry's estoppel argument untenable.

Berry's estoppel argument is entirely predicated on *Employers Mutual Liability Ins. Co. v. Sears, Roebuck*, 621 F.2d 746 (5th Cir. 1980). There, the court held that "an insurer's settlement with a claimant, if entered voluntarily and with knowledge of facts indicating noncoverage, waives the insurer's defense of noncoverage of the insured tortfeasor unless the insurer otherwise protects its defenses." 621 F.2d at 747 *citing*, 16A J. Appleman, *Insurance Law and Practice* § 9366, at 826 (1968); *see* 4 *Couch Cyclopedia of Insurance Law* § 26:328, at 267–68 (2d ed. R. Anderson 1960). Quoting from its previous decision in *Pacific Indemnity Co. v. Acel Delivery Service, Inc.*, 485 F.2d 1169 (5th Cir. 1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974) the court reasoned:

> If an insurer assumes the insured's defense without obtaining a nonwaiver agreement or a reservation of rights and with knowledge of the facts indicating noncoverage, all policy defenses, including those of noncoverage, are waived, or the insurer may be estopped from raising them.... The theory underlying this exception is based upon the apparent conflict of interest that might arise when the insurer represents the insured in a lawsuit against the insured and simultaneously formulates its defense against

the insured for noncoverage. For estoppel to prevent the assertion of a defense of noncoverage in accordance with this exception, there must be a showing of prejudice.... *see also Hartford Acc. & Indem. Co. v. Swilley*, 304 F.2d 213, 216 (5th Cir. 1962) .... As to the application of waiver, the proponent must demonstrate a voluntary relinquishment of a known right.

621 F.2d at 747.

After discussing the estoppel principle, the court went through great pains to distinguish between the fact pattern of *Employers Mutual*, where the estoppel principle was clearly applicable, and other instances where the principle was inapplicable. Furthermore, the court in footnote 5, discussing the applicability of the estoppel principle, distinguished between the facts in *Employers Mutual* and the facts presently before this court:

> In the present case, the insurer settled the claim, then sought repayment from the insured tortfeasor, and that settlement without protection of the insurer's rights waived the defense of noncoverage. *Cf. Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900 (5th Cir. 1972) (the insurer settled the claim, but did not seek contribution from the insured tortfeasor; instead that tortfeasor sued the insurer on its duty to defend).

621 F.2d at 748, n. 5.

By attempting to offer *Employers Mutual* as support for the application of the estoppel principle in this case, Berry fails to appreciate the above-mentioned factual distinction existing in the two cases. The court agrees with the holding in *Employers Mutual*, it is Berry's attempt to apply this holding to the facts of this case that causes concern.

■ The estoppel principle of *Employers Mutual* becomes applicable when an insurer settles a claim without protecting or reserving its rights and then seeks repayment from the insured on that claim. A settlement by the insurer is *sine qua non* to the application of the *Employers Mutual* estoppel principle. Although HIC did settle the

Mississippi workmen's compensation claim brought by decedent's survivors, the estoppel principle of *Employers Mutual* is still inapplicable, since the costs associated with such settlement are not the subject of Berry's action against HIC. Berry's action for indemnification against his insurers results from Sears & Singer's attempt to recoup from Berry the costs of settling the original death claim brought by decedent's survivors. Thus, the settlement costs which provide the basis for Berry's third party action against his insurers result from the settlement between Sears & Singer and decedent's survivors, not from a compromise between Berry's insurers and decedent's survivors. Consequently, for purposes of Berry's action against HIC, there is no settlement between HIC and any claimant that would estop HIC from asserting a noncoverage defense under the authority of *Employers Mutual.*[5] Although ingeniously argued by Berry, it is hard to believe that the court in *Employers Mutual* intended its holding to estop an insurer from asserting a noncoverage defense against an insured simply because an outside party to the insurance agreement compromised a claim without the involvement of the insurer. The purpose of *Employers Mutual's* estoppel principle is to prevent an insurer from asserting policy defenses which are inconsistent with its actions and representations. The principle is not intended to prevent an insurer from asserting policy defenses which are inconsistent with the actions and representations of others.

Reduced to its bare minimum, Berry's third party action against HIC for indemnification is an action against said insurer for its alleged failure to defend Berry against Sears & Singer's claim for contribution. "Under Louisiana law, the insurer's duty to defend a suit brought against its insured defendant is determined by the allegations of the plaintiff's complaint. The insurer is obligated to furnish a defense unless the allegations in the complaint, taken as true,

'unambiguously exclude coverage.'" *Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900, 902 (5th Cir. 1972) (and cases cited therein). This court must therefore determine if the allegations advanced by Sears & Singer (the injured third party plaintiffs) in the complaint filed in their action against Berry (the insured third party defendant) "unambiguously excluded coverage" so as to relieve HIC (the insurer) of its duty to defend.

■ Sears & Singer, in their third party complaint against Berry, specifically deny that decedent was an employee of the insured. *See* Paragraph IV of original third party petition. Additionally, Sears & Singer specifically allege in their complaint that the accident which formed the basis of their demand for contribution occurred in New Orleans, Louisiana. Taking these allegations as true—as this court must for purposes of determining the duty to defend—the complaint "unambiguously excludes coverage" under the policy issued to Berry by HIC. Coverage B of such policy provides:

Coverage B—Employers' Liability: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury by accident or disease, including death at any time resulting therefrom,

(a) sustained in the United States of America, its territories or possessions, or Canada by any employee of the insured arising out of and in the course of his employment by the insured either in operations in a state designated in Item 3 of the declarations or in operations necessary or incidental thereto, or

(b) sustained while temporarily outside the United States of America, its territories or possessions, or Canada by any employee of the insured who is a citizen or resident of the United States or Canada arising out of and in the course of his

---

5. There would exist a settlement by an insurer necessary to estop HIC from asserting a noncoverage defense under *Employers Mutual* had this case arisen under a third party action by HIC against Berry for contribution for demands expended in compromising the Mississippi workmen's compensation claim.

employment by the insured in connection with operations in a state designated in Item 3 of the declarations; but this insurance does not apply to any suit brought in or any judgment rendered by any court outside the United States of America, its territories or possessions, or Canada or to an action on such judgment wherever brought."

Condition 9 provides:

9. Limits of Liability—Coverage B: The words "damages because of bodily injury by accident or disease, including death at any time resulting therefrom," in coverage B include damages for care and loss of services and damages for which the insured is liable by reason of suits or claims brought against the insured by others to recover the damages obtained from such others because of such bodily injury sustained by employees of the insured arising out of and in the course of their employment. The limit of liability stated in the declarations for coverage B is the total limit of the company's liability for all damages because of bodily injury by accident, including death at any time resulting therefrom, sustained by one or more employees in any one accident. The limit of liability stated in the declarations for coverage B is the total limit of the company's liability for all damages because of bodily injury by disease, including death at any time resulting therefrom, sustained by one or more employees of the insured in operations in any one state designated in Item 3 of the declarations or in operations necessary or incidental thereto.

The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

In the first part of the first sentence of this paragraph, the significant words are "employee" and "for which the insured is liable." Since the complaint specifically denies that Baughman was an employee of Berry, the possible coverage referred to therein is inapplicable.

In both the original insuring clause and Condition 9, HIC's liability is limited to claims sustained by one or more "employees" of the insured in operations in any one state designated in Item 3. The only state designated in Item 3 is Mississippi, and the accident occurred in the State of Louisiana. The additional phraseology of that paragraph which includes "in operations necessary or incidental thereto" is also inapplicable because the operation referred to under the policy is Berry's farm located in Mississippi and, obviously, the work being performed by Baughman and Pritchard on Berry's rental property in New Orleans, Louisiana was not incidental to this operation.

Sears & Singer's complaint, taken as true, specifically denies that Baughman was an employee of Berry and further alleges that the accident which caused Baughman's death occurred in New Orleans, Louisiana. The insurance policy excludes coverage for persons who are not Berry's employees and for claims not arising in the State of Mississippi. Because the allegations "unambiguously exclude coverage", HIC was not under a duty to defend Sears & Singer's suit against Berry.

■ As previously mentioned, Berry brought an alternative action for indemnity against National for its alleged failure to defend him against Sears & Singer's claim for contribution. National denies any duty to defend. It contends that its policy for general liability provides no insurance protection to Berry against liability resulting from or arising out of injuries to or death of an employee. It further argues that the policy does not cover the injury or death of any person if the insured has a policy providing workmen's compensation benefits for such bodily injury or death. National submits that Berry, at the time of decedent's death, was Baughman's employer, who had in force and effect a policy of workmen's compensation issued to him by HIC providing protection against workmen's compensation liability.

The above contention of National fails to consider the well-established principle of Louisiana jurisprudence that the insurer is obligated to furnish a defense "unless the

allegations in the complaint, taken as true, unambiguously exclude coverage." Stated previously, National's insurance policy excludes coverage of any bodily injury to employees covered under workmen's compensation. Sears & Singer's complaint, taken as true, specifically denies that Baughman was an employee of Berry. Such allegation, taken as true, is sufficient to raise the issue concerning the duty of National to defend Berry against Sears & Singer's third party demand. Thus, National was under a duty to defend Berry since the allegations in the third party complaint, taken as true did not "unambiguously exclude coverage." This is true, even if it may ultimately be determined that coverage does not exist, since "the duty of an insurer to defend its insured under a policy of liability insurance is of greater scope than the insurer's duty to pay." *Bandy* at 903. In support of this holding, the court adopts the reasoning of the court in *Bandy v. Avondale Shipyards, Inc.*:

> The 'failure of an insurer to defend a suit as contemplated by the policy renders the insurer liable for all expenses incurred by an insured in defense of the action, including reasonable attorney's fees.' *Smith v. Insurance Co. of Pennsylvania, supra,* 161 So.2d [903] at 918. The insurer may, if it chooses, refuse to defend the suit, relying on its own assessment of the allegations in the complaint. It does so, however, at the risk of becoming liable to the insured for attorney's fees and expenses incurred by the insured in his defense in the event of an ultimate determination that the duty to defend was present.
>
> The issue of coverage is related to the duty to defend in that . . . the allegations in the initial complaint, unless they unambiguously exclude coverage, determine the duty to defend, thus necessitating a preliminary evaluation of coverage by the insurer or by the court in order to assess the duty to defend. The insurer may, of course, 'deny coverage [and preserve its options on that issue] and yet furnish its insured with a defense [thus fulfilling its duty to defend] without subjecting itself

to liability' . . . '[T]he duty of an insurer to defend its insured under a policy of liability insurance is of greater scope than the insurer's duty to pay . . . Although it may ultimately be determined that coverage does not exist, the duty to defend nevertheless exists if the allegations of the petition taken as true would result in liability which the insurer is obligated to discharge on behalf of the insured.'

458 F.2d at 902–903.

It is hereby decreed that National Surety Company is responsible for all expenses incurred by Berry in defense of Sears & Singer's third party claim, including reasonable attorney's fees. Counsel for both National Surety Company and Berry shall submit to the Court within ten (10) days from the date of this Order Memoranda suggesting what amount would be an appropriate award in this case.