430 So.2d 243 (1983)
Debra TOLSTONOG
v.
MULLER RESTAURANT SUPPLY, Warren Stockstill, ABC Insurance Company and XYZ Insurance Company.
No. CA-0457.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1983.
*244 David W. Oestreicher, II, Oestreicher, Whalen & Hackett, New Orleans, for plaintiff/appellant.
Donna L. Yukna, New Orleans, for Gen. Acc. & Fire Ins. Co.
Jay Zainey, New Orleans, for Mrs. Muller and Muller Restaurant Supply, Inc.
Before REDMANN, GARRISON and CIACCIO, JJ.
CIACCIO, Judge.
Debra Tolstonog sued Warren Stockstill, her employer, and Mrs. Muller,[1] an alleged statutory employer, and their insurers to recover workmen's compensation benefits for injuries sustained in a work-related accident. The plaintiff also sought an award of attorney fees and penalties pursuant to R.S. 23:1201.2. Additionally, the plaintiff sued Muller Restaurant Supply Co., Inc. and its insurer in tort to recover damages for the injuries she sustained.
After a trial on the merits, the district court awarded the plaintiff compensation of $83.33 per week for four (4) weeks, medical expenses of $70.00, statutory penalties and attorney fees of $500.00 against Warren Stockstill. The court maintained Mrs. Muller's exception of no right or cause of action, *245 dismissing her from the suit. The court also dismissed the claim for workmen's compensation benefits against Muller Restaurant Supply Co., Inc. and its insurer and maintained the exception of prescription filed by Muller Restaurant Supply Co., Inc. and its insurer against the plaintiff's tort claim.
Plaintiff appeals from that portion of the judgment which denied her claim for workmen's compensation benefits, penalties and attorney fees against Muller Restaurant Supply Co., Inc. and its insurer.
The sole issue on appeal is whether the trial court erred in refusing to find that Muller Restaurant Supply Co., Inc. was the statutory employer of the plaintiff.
The uncontested facts are as follows:
Muller Restaurant Supply Co., Inc. is engaged in the business of selling equipment and supplies to restaurants, hospitals and cafeterias. The corporation operated from a building owned by Mrs. Maudene Muller, located at 234 Chartres Street in New Orleans. On May 10, 1979, the company purchased a building at 209 North Peters Street in New Orleans, in order that the business operations could be moved to this location which provided more spacious quarters, available parking and delivery space.
At the time of the purchase and subsequent renovation of the North Peters' location, Mrs. Maudene Muller was the president and sole stockholder of the corporation. On behalf of the corporation, she entered into a verbal contract with Warren Stockstill, of Stockstill Construction, for certain painting and construction work to be performed on the vacant building on North Peters Street. According to the contract, Mr. Stockstill was to move certain interior walls and paint the interior and exterior of the building for the total sum of $41,500. The work was to be completed in ten (10) weeks. In anticipation of the work to be completed, Mrs. Muller accompanied Mr. Stockstill to the vacant building, pointing out to him the specific area of space which would be needed for the business operations.
Mrs. Muller, on behalf of the corporation, hired a plumbing contractor to add a second toilet to the bathroom facilities. She also hired an electrical contractor to install new circuit breakers and additional fluorescent lights and bring the building up to code.
In August of 1979, the 23 years old plaintiff was hired by Warren Stockstill to paint the vacant building at 209 North Peters Street. She was hired to work a 5 day, forty (40) hour week at a gross salary of $140.00 per week. On October 1, 1979 she was working on the job site when she stepped from a scaffolding into a portion of cracked cement and twisted her right ankle. She was treated at the Charity Hospital Emergency Room on October 8, 1979. The plaintiff was seen by an internist and orthopedist who diagnosed her condition as a "badly sprained ankle." She was X-rayed and a walking cast was applied. Miss Tolstonog was treated as an outpatient and remained in the cast for eight weeks. The cast was removed at that time because the plaintiff was leaving town. Miss Tolstonog was treated on a regular basis from September 26, 1980 through March 31, 1981 by a Massachusetts chiropractor, Dr. Mark Tanny. In addition to pain in her right ankle, which was diagnosed as tendonitis, plaintiff complained of tension headaches and tension in the neck, shoulder and back. The plaintiff visited Dr. Ronald Geiger, a Massachusettes orthopedic surgeon on December 11 and 30, 1980 and March 31, 1981. He diagnosed her condition as "Achilles tendonitis" with "some residual laxity of her ankle" and prescribed exercise which improved her condition. His prognosis was that the plaintiff could experience intermittent problems in the future (i.e., concerning the right ankle) but he did not expect any significant long term permanent disability.
Following the accident, plaintiff's work picture gradually improved. Although the plaintiff did not work in October, 1979, she did teach on a substitute basis in November and December, 1979. She taught on the average of three times per week earning a gross salary of $25.00 per day.
*246 In February, 1980 Miss Tolstonog secured a job in social services in Boston, Massachusetts earning an initial net salary of $108.00 per week. Over a period of several months and position changes, the plaintiff earned $264.00 per week gross salary by December, 1981. She was forced to leave this job due to a diminution in the case load. During this time, the plaintiff secured a Master's degree while attending school at night. The plaintiff was to start a job as a social worker with the Boston Secure Treatment and Justice Resource Institute on March 29, 1982 at an annual salary of $15,000.
Appellant argues that "Muller is a restaurant supply company; for the period that work was contracted out on 209 N. Peters, Muller was also engaged in the renovation business and Mrs. Muller functioned as a general contractor, overseeing the entire operation."
A person rendering service for another in any trade, business or occupation is presumed to be an employee under the Louisiana Workmen's Compensation Act. R.S. 23:1044.
A principal will become liable, as a statutory employer, for compensation benefits to the employee of a contractor if the contractor is performing work which is part of the principal's "trade, business or occupation." R.S. 23:1061; 1021(5). Lushute v. Diesi, 354 So.2d 179 (La., 1978). An individual may engage in more than one trade, business or occupation. Smith v. Louisiana Paving Co., 411 So.2d 550 (La.App., 1st Cir., 1982); Dixon v. Tugwell, 409 So.2d 343 (La. App., 1st Cir., 1982). The determination of whether a principal is a statutory employer must be handled on a case-by-case basis. Boudreaux v. Boudreaux, 369 So.2d 1117 (La.App., 1st Cir., 1979), writ den. 371 So.2d 615 (La.)
In Melancon v. Tassin Amphibious Equipment Corp., 427 So.2d 932 (1983), this Court quoting Blanchard v. Engine & Gas Compressor Services, 613 F.2d 65 (U.S.App., 5th Cir., 1980) set forth the test for determining the existence of a statutory employer:
"The proper standard, as we see it, is whether the activity done by the injured employee or his actual immediate employer is part of the usual or customary practice of the principal or others in the same operational business.
More specifically, we should first consider whether the particular principal involved in the case customarily does the type of work performed by the contractor and whether the contractor's work is an integral part of the work customarily performed by the principal. If either of these situations exist, then there is a statutory employment relationship, and the inquiry ends there. If however, the principal does not normally engage in this type of activity, or if it is not normally a part of his practices, then it is necessary to determine if others engaged in business similar to that of the principal customarily do this type of work or if it is an integral part of their businesses. If either of these inquiries yields an affirmative answer, then the general custom of the trade will control to make the relationship between the principal in question and his contractors' employees that of statutory employer and employee."
Ultimately the determination of whether a contractor's activities are part of the principal's trade, business or occupation is a question of fact. Luschute v. Diesi, supra; Dixon v. Tugwell, supra.
Likewise, the question of whether one engaged in constructing (or renovating) a building is in the construction business is a question of fact. Doss v. American Ventures, Inc., 261 La. 920, 261 So.2d 615 (La., 1972); Broussard v. Adams, 270 So.2d 913 (La.App., 3rd Cir., 1972).
Based on the facts presented, the trial court concluded that only Warren Stockstill was liable to the plaintiff for compensation benefits (i.e., that Muller Restaurant Supply Co., Inc. was not the plaintiff's statutory employer.) We agree with that conclusion. Muller Restaurant Supply Co., Inc. is involved in the trade, business or occupation of selling equipment and supplies to restaurants, hospitals and cafeterias. *247 Renovation work is not the type of work customarily performed by this restaurant supply business nor is it an integral part of the work performed by this business. Likewise, the general custom of the restaurant supply business does not include renovation work as an integral part of its work, nor is it the customary work of such businesses.
Moreover, the facts of this case do not support the appellant's contention that Muller was also engaged in the renovation business and Mrs. Muller functioned as a general contractor overseeing the entire operation. Although an individual may have more than one business, the facts of this case do not support such a conclusion.
Mrs. Muller testified that neither she nor Muller Restaurant had ever been involved in renovation before. In this case the trial court found and the record supports the following findings:
She (plaintiff) was hired by Stockstill to work for him; she received all orders and instructions from Stockstill; she was paid weekly $140.00 in cash by Stockstill. Stockstill and his other workmen had put up the scaffold on which she was injured.
* * * * * *
The corporation bought an old building on Peters Street which had to be renovated before the business could move into it. The corporation hired Warren Stockstill to locate some partition walls and to paint the building inside and out for the price and sum of $41,500.00. Stockstill furnished all the labor and materials; obtained the building permit; obtained clearance and permission to do the work from the Vieux Carre Commission. Warren Stockstill was a separate, independent contractor. He contracted to do this work. The corporation paid him. He hired his own carpenters, painters and laborers; he paid all their wages; he, alone, gave them instructions and supervision; he furnished all the necessary equipment including the scaffolding, he furnished all necessary materials. He hired his own workmen. Neither Mrs. Muller nor the Muller Corporation had anything whatsoever to say or do about the work being done. (Reasons for Judgment pp. 6-10.)
The trial court correctly concluded that Muller Restaurant Supply was neither the employer nor statutory employer of the plaintiff and accordingly, it was not legally responsible to pay her compensation benefits. Likewise, the trial court was correct in refusing to award attorney fees and penalties pursuant to R.S. 23:1201.2.
For the reasons assigned, the judgment of the district court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Muller Restaurant Supply Co., Inc. was added as a party by an amendment to the original petition.