|2DALEY, Judge.
Plaintiff, Dennis J. Ross, appeals the hearing officer’s determination that his employment was not covered by the Louisiana Workers’ Compensation Act. After thorough review of the record and jurisprudence, we reverse the judgment of the trial court, and remand for determination of compensation due plaintiff.
Ross alleged that he was employed by Kenny Lobell, d/b/a Oak Manor Farms as a carpenter who engaged in renovation and repair work at Oak Manor Farms, a twenty six acre property with a main house, two small houses, and two large barns. His injury occurred as he was replacing shutters on one of the small houses when his ladder slipped or lost position, causing Ross to twist and fall to the ground, injuring his neck arid back.
Mr. Lobell, owner of Oak Manor Farms, argued that Oak Manor Farms was his personal residence and that Ross was a subcontractor who was engaged in the ^renovation of Lobell’s personal home, and thus was not covered under the Louisiana Workers’ Compensation Law.
Ross testified that he was a carpenter and had worked for Lobell on several repair and renovation projects, including, a saloon Lobell owned in the French Quarter, apartments located in New Orleans, the stables and residential dwelling in St. Rose. Lobell purchased Oak Manor Farms, which was a 26 acre farm with a main house, two small houses, and two large barns. Ross performed carpentry work on all of the structures. He testified that Lobell was renovating the house to live in, and was renovating the barn for his girlfriend’s horses and for boarding other horses. The barns contained space for approximately 22 stalls. On the day of his injury Mr. Ross testified he had finished hanging shutters on the barn and was hanging matching shutters on the adjacent small house when he fell. A caretaker for the horses resided in one of the small houses and an elderly women who had lived on the property before Mr. Lobell purchased the property resided in the other adjacent small house. The barns and the small houses were in close proximity to each other. There is no evidence that Mr. Lobell ever intended to reside in either of the small houses.
Ross was paid by the hour on the saloon repair jobs and the farm renovations. Later, in return for a reduced hourly wage, Lobell allowed Ross to move into the main house while the renovations were ongoing. About four or five inonths before Ross’s accident, the main house burned. It is undisputed that Lobell did not live in the house before or after the fire. After the fire, the main house was not rebuilt.
Ross testified that he used his own tools and paid his own taxes every year. He also said that the other people for whom he did work would send him a Form 1099 every year. He never got a 1099 or a W-2 from Lobell. Ross stated that he supervised the other workers on the premises, but that he did not exercise any control |4over hiring or firing them. Ross testified that he worked long hours during the week, and worked Saturdays free in exchange for the rent. Ross introduced copies of checks he received in payment for his labor; none of the amounts were identical. These checks were written on an account titled “Kenny Lobell d/b/a Oak Manor Farms.”
*908 Lobell testified that he bought Oak Manor Farms for his personal residence. He introduced his purchase agreement and sale of his former residence. . He testified that his homestead exemption was on the Oak Manor property. Lobell never moved into the farmhouse, because fire damaged it before the renovations were complete. He testified that he had already moved some clothing and antique furniture to the farm, which were also destroyed in the fire.
Lobell said that previous to the work at Oak Manor Farms, Ross worked for him at his Bourbon Street business, at some rental property he owned, and at his girl friend’s house. The work on Bourbon Street and the rental property took place while Ross was also working at Oak Manor Farms.
Lobell stated that Ross worked at his own pace and in his own way at the projects Lobell would give him. Lobell said that he occasionally arranged jobs for Ross with other people, and that Ross was always free to accept other jobs. ■ Lobell testified that his principal occupation was running the Bourbon Street saloon, and Ross’s activities in renovating the farm house were unrelated to that business. Lobell testified that his girlfriend and her friend had around eight horses in the barn at any given time, with occasional additional paying horses that belonged to their friends. He testified that the horse business did not become significant until after Ross left.
IsAnalysis
For the purposes of workers’ compensation, a person rendering a service for another person is presumed to be an employee. LSA-R.S. 23:1044. However, at the time of this accident, LSA-R.S. 23:1035(B) stated:[1]
B. There is exempt from coverage under this Chapter all labor, work, or services performed by any employee of a private residential householder in connection with the private residential premises of such householder and which labor, work, or services are not incidental to and do not arise out of any trade, business, or occupation of such householder. With -respect to such labor, work, or services and any employee performing the same, a private residential householder shall have no liability under the prpvisions of this Chapter either as employer or as a principal; however, any person who is engaged in the trade, business, or occupation of furnishing labor, work, or services to private residential premises shall be liable under the provisions of this Chapter to his employees or their dependents for injury or death arising from and incidental to their employment in rendering such labor, work, or services.
It is undisputed that Lobell bought Oak Manor Farms for his personal residence and that Ross was engaged in the renovation of the house for that purpose. But after the house burned, Ross stayed on the property, working to renovate the barns and caretaker cottages in preparation for the arrival of the boarding horses.
We find that Ross was clearly engaged in more than renovations on Mr. Lobell’s personal residence at the time of his injury. We find that his work in renovating the barns and cottage was clearly in preparation of a commercial enterprise, the rental of stalls for horses. Mr. Lobell testified that his girlfriend’s friends boarded horses there for a fee, and were later joined by other paying customers. Lobell testified:
“My girlfriend was into horses and they had people that she had with horses that we were going to take in, and not really as a commercial aspect, but just people that she rode with that would pay us rent for the barn, but not as a commercial entity.”
| f,For the purposes of workers’ compensation liability, if a person not in the construction business undertakes to act as his own general contractor, it does not necessarily follow as a matter of law that such a person is, or is not, in the construction business and thus liable to injured workers under the workers’ compensation law; that is a question of fact to be determined under the circumstances of each ease. LSA-R.S. 23:1035; Chamberlin v. Desoto, 463 So.2d 58 *909 (La.App. 3 Cir.1985), writ den. 466 So.2d 470 (La.1985). The test is whether the person’s services were a substantial, essential and recurring part of the defendant’s regular business. Id.
Ross relies on Doss v. American Ventures, Inc., 261 La. 920, 261 So.2d 615 (1972) and Slocum v. Lamartiniere, 369 So.2d 201 (La. App. 3 Cir.1979),. writ den. 372 So.2d 569 (La.1979). In Doss, the injured plaintiff was found to be entitled to workers’ compensation from the defendant, the building owner-lessor, because the defendant was found to be engaged in the construction business when its executive officers acted as general contractors supervising the reconstruction of the building it used and rented in its trade as a leasing business. In Slocum, the defendants hired plaintiff in the construction of a new grocery store for the defendant, who was a grocer by trade and had determined that he needed a new grocery store. In both cases, the plaintiffs were entitled to workers’ compensation benefits because they were injured while performing work for the defendants in furtherance of, and/or in connection with, defendants’ trade, business, or occupation.
Lobell testified that his business was running the saloon on Bourbon Street, and that the renovations of his house on the farm was unconnected to that business.
|7In Fonseca v. Marlin Marine Corp., 410 So.2d 674 (La.1981), the Supreme Court stated:
We recognize that an individual may have several different businesses, and we look to the facts of each particular case to determine whether or not construction, renovation or repair work is connected with the trade, business or occupation of the employer. Doss v. American Ventures, Inc., 261 La. 920, 261 So.2d 615 (1972). Generally, we have held that where the building being repaired or constructed houses the business or business equipment of the employer, or is leased by an employer engaged in the business of leasing or renting, the employee injured while working thereon is entitled to workmen’s compensation benefits. (FN2) On the other hand, where the employee is injured while working on property of the employer which has no connection with the employer’s business, he is not covered by the workmen’s compensation law. (Footnotes omitted)
After considering the testimony and evidence in this case, we find the hearing officer was clearly wrong in her findings of fact that Ross’s work in hanging shutters on the small house and barn was not a part of Lobell’s trade, occupation or business so as to entitle him to workers’ compensation benefits., Despite his statement that his business was the saloon, clearly Lobell had the additional business of the horse boarding at Oak Manor Farms, and the general preparation of the property as a commercial enterprise. It is also of note that the main house which burned to the ground months before the injury was never rebuilt, and the property is now being developed as a residential subdivision.
The trial court never reached the issue of the amount of compensation due Ross. We remand for the presentation of evidence regarding Ross’s medical expenses and the amount of compensation.
REVERSED AND REMANDED.

. This statute was amended effective June 14, 1995, adding the exemption from coverage for work done on unincorporated farms.